# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Antwaren ROBERTS,

Petitioner,

v.

Kathleen ALLISON,

Respondent.

Case No.:  22-cv-00251-LL-BGS

**REPORT & RECOMMENDATION GRANTING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 9]**

Petitioner Antwaren Roberts ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. §2254, challenging his 2014 conviction in San Diego County Superior Court case number SCD252523.  (ECF No. 1.)[1]  Respondent Kathleen Allison ("Respondent") moved to dismiss the Petition contending the Petition is untimely.  (ECF No. 9.)  Petitioner did not file an opposition.  (*See* Docket.)

This Report and Recommendation is submitted to United States District Judge Linda Lopez pursuant to 28 U.S.C. § 636 (b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  Based on the documents and evidence presented, and for the reasons set forth below, the Court **RECOMMENDS** that Respondent's Motion to Dismiss (ECF No. 9) be **GRANTED** and that this action be **DISMISSED**.

---

[1] The Court cites the CM/ECF pagination when referencing the Petition and attached exhibits (ECF No. 1); as well as Respondent's Motion to Dismiss (ECF No. 9).  The Court cites to internal pagination for Lodgments (ECF No. 10 ["Lodg."]).

# I.     BACKGROUND

On September 4, 2014, a jury in San Diego County Superior Court case number SCD252523 convicted Petitioner of willful, deliberate, and premeditated attempted murder (count 1), assault with a semi-automatic firearm (count 2), and possession of a firearm by a felon (count 3) pursuant to Cal. Penal Code §§ 664/187, 189, 245(b), 29800(a)(1). (Lodg. 1 at 541–43.)  The jury found true that all three offenses were committed for the benefit of, at the direction of, or in association with a criminal street gang pursuant to Cal. Penal Code § 186.22(b)(1). (Lodg. 1 at 541–43.)  Further, the jury found to be true that Petitioner used a firearm during the attempted murder, proximately causing great bodily injury to another person pursuant to Cal. Penal Code § 12022.53(d), and that he personally used a firearm and personally inflicted great bodily injury during the assault charged in count 2 pursuant to Cal. Penal Code §§ 12022.5(a), 12022.7(a).  (Lodg. 1 at 541–42.)  Petitioner then admitted five prison prior convictions after trial, pursuant to Cal. Penal Code §§ 667.5(b), 668.  (Lodg. 1 at 544.)  On October 29, 2015, the trial court sentenced Petitioner to an indeterminate term of forty-years to life in prison and a consecutive five-year determinate term.  (Lodg. 1 at 559–61.)

After he was convicted, Petitioner appealed to the California Court of Appeal raising six grounds for relief.  (Lodg. 2.)  Respondent then filed a responsive brief and Petitioner filed a reply brief.  (Lodg. 3, 4.)  The Court of Appeal requested supplemental briefing on April 25, 2017, which Petitioner filed on May 9, 2017 and Respondent filed on May 4, 2017.  (Lodg. 5, 6.)  On July 18, 2017, the Court of Appeal issued an opinion reversing the jury's findings as to the gang enhancement, affirming the conviction in all other respects, and remanding the matter with instructions.  (Lodg. 7.)  On July 27, 2017, Respondent filed a petition for rehearing.  (Lodg. 8.)  On August 3, 2017, the Court of Appeal modified the opinion, with no change in the judgment, and denied Respondent's petition for rehearing. (Lodg. 9.)

Both parties sought review of the state appellate court's decision, with Petitioner filing his petitioner for review on August 22, 2017 and Respondent filing her petitioner for

review on August 25, 2017.  (Lodg. 10, 11.)  On November 1, 2017, the California Supreme Court denied both petitions and Respondent's request for an order directing depublication.  (Lodg. 12; *see also* ECF No. 1 at 3.)  On January 8, 2018, the trial court dismissed the gang enhancements, modified the sentence on the attempted murder count, and resentenced Petitioner to thirty-two years to life plus five years in state prison.  (Lodg. 14 at 3.)

On March 10, 2021, Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court.  (Lodg. 13.)  On May 7, 2021, the superior court denied the petition.  (Lodg. 14; *see also* ECF No. 1-5.)  The court found that Petitioner "appealed the judgment and raised, for all intents and purposes, claims and allegations identical to the ones raised in the instant petition" and that "[t]he Court of Appeal reversed the jury's findings on the gang enhancements and remanded the case to the trial court for resentencing." (Lodg. 14 at 4; *see also* ECF No. 1-5 at 4.)  The court then indicated that "the judgment was otherwise affirmed[,]" making "the gang enhancement claim [ ] moot because the enhancements were ultimately dismissed."  (*Id.*)  The court found that "Petitioner fail[ed] to state a prima facie case for relief" since the "remaining claims have already been raised and resolved on appeal, and Petitioner does not explain why these claims should be reconsidered."  (*Id.*)

On July 2, 2021, Petitioner filed a subsequent petition for writ of habeas corpus in the California Court of Appeal.  (Lodg. 15.)  On July 16, 2021, the Court of Appeal denied the petition and concluded that "[m]ost of the petition is procedurally barred as repetitive of claims that were considered on appeal." (Lodg. 16 at 2.)  The Court of Appeal further found that Petitioner "has identified no jurisdictional error, fundamental constitutional error striking at the heart of the trial process, or a change in the law that would justify reconsideration of these previously rejected claims." (Lodg. 16 at 3.)  As to Petitioner's ineffective assistance of counsel claim, the Court of Appeal found it was "barred as untimely, because Petitioner delayed more than five years since sentencing to assert it and has provided no explanation to excuse the delay." (Lodg. 16 at 3.)

On February 22, 2022, Petitioner filed the pending Federal Petition and attached his August 2017 California Supreme Court petition for review as the supporting memorandum of points and authorities.  (ECF No. 1.)  This Court granted Petitioner's Motion for Leave to Proceed *In Forma Pauperis* on May 12, 2022 and issued the current order requiring a response to the Petition on May 17, 2022. (ECF Nos. 6, 7.)  Respondent filed her Motion to Dismiss the Petition and lodged state court records.  (ECF Nos. 9, 10.)  Petitioner did not file any opposition to the motion.  (*See* ECF No. 4 [setting opposition deadline as August 22, 2019]; *see also* Docket.)

## II.    LEGAL STANDARD

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts expressly permits a district court to dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court[.]"  Rules Governing § 2254 Cases, Rule 4, 28 U.S.C. foll. § 2254; *see also O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) ("[R]ule 4 of the Rules Governing Section 2254 in the United States District Courts 'explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated."); *Purdy v. Bennett*, 214 F.Supp.2d 348, 353 (S.D.N.Y. 2002) (applying Rule 12(b)(6) standards to motion to dismiss authorized by court pursuant to Rule 4 of the Rules Governing § 2254 Cases).  The Advisory Committee Notes to Rule 8 also indicates that the court may deny a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

## III.    DISCUSSION

Respondent moved to dismiss the Petition as untimely.  (ECF No. 9-1.)  Respondent asserted that the limitations period in this case started to run on February 16, 2018, which was the day after the expiration of the ninety-day period within which Petitioner could petition for a writ of certiorari.  (*Id.* at 4–5.)  Further, Respondent argued that the Petition is barred by the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), as no statutory tolling occurred before the limitations

period expired and there is no basis for equitable tolling.  (*Id.* at 5–8.)  As noted above, Petitioner did not file an opposition.  (*See* Docket.)

### A. The Petition Is Barred by the AEDPA Statute of Limitations

1. AEDPA's One-Year Statute of Limitations and Commencement of the Limitations Period

The instant Petition was filed after April 24, 1996 and is subject to AEDPA, which provides a one-year statute of limitations for filing a habeas corpus petition in federal court. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (citing 28 U.S.C. § 2244(d)(1)).  This one-year statute of limitations period begins to run at the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Here, subparagraphs (B), (C), and (D) are not applicable to Petitioner.  Petitioner has provided no argument or evidence that there were state impediments in violation of the Constitution or laws of the United States that prevented him from seeking further relief, that his claims rely on a new constitutional right, or that the factual predicate for his claim was unknown at the time his conviction became final. Thus, AEDPA's one-year statute of limitations begins to run on "the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  28 U.S.C. § 2244(d)(1)(A).  Petitioner had one year from the date his conviction became final to file a petition for writ of habeas corpus in federal court.

*Harris v. Carter*, 515 F.3d 1051, 1053 (9th Cir. 2008); *Nava v. Beard*, No. 13-CV-365-H-JMA, 2014 WL 1028532, at *3 (S.D. Cal. Mar. 2014).

In this case, however, on January 8, 2018, after remand from the California Court of Appeal, (*see* Lodg. 7), the superior court dismissed the gang enhancements, modified the sentence on the attempted murder count, and resentenced Petitioner to thirty-two years to life plus five years in state prison, (Lodg. 14 at 3).  The relevant judgment, for purposes of determining the start of the one-year statute of limitations for filing a habeas petition under 28 U.S.C. § 2244(d)(1), is the judgment under which a prisoner is being held.  *Marquez v. McDaniel*, 729 F. App'x 583, 584 (9th Cir. 2018) (citing *Smith v. Williams*, 871 F.3d 684, 688 (9th Cir. 2017)).  "Where an amended or corrected judgment is entered, a prisoner is held under that amended or corrected judgment[,]" and "the one-year [statute of limitations] period runs from the date of the amended judgment[.]"  *Id.* (citing *Smith*, 871 F.3d at 688).  Numerous district courts that applied *Smith* have found that the federal one-year limitation period under 28 U.S.C. § 2244(d)(1)(A) started to run after the expiration of the time to file a direct appeal from petitioner's amended judgment of conviction.  *See Anderson v. Baca*, Case No. 3:16-cv-00545-MMD-WGC, 2018 WL 1307856, at *2 (D. Nev. Mar. 2018) (finding that the one-year federal limitation period began to run after the expiration of the time period to appeal petitioner's intervening judgment); *Duda v. Neven*, 2:16-cv-01176-JCM-CWH, 2017 WL 4350662, at *2 (D. Nev. Sept. 2017) (finding that the federal one-year limitation period did not begin to run until the expiration of the time period to file a direct appeal from petitioner's amended judgment of conviction); *Gayler v. Neven*, Case No. 2:15-cv-00972-APG-CWH, 2017 WL 4250049, at *2 (D. Nev. Sept. 2017) (fining that the federal limitation period did not begin to run until the time period to file a direct appeal expired following the entry of petitioner's second amended judgment of conviction).  In California, when a conviction is not appealed, it becomes final sixty days after sentencing.  *See* Cal. R. Ct. 8.308(a) ("[A] notice of appeal and any statement required by Penal Code section 1237.5 must be filed within 60 days after the rendition of the judgment or the making of the order being appealed."); *Roberts v. Marshall*, 627 F.3d

768, 771 (9th Cir. 2010); *McKinney v. Macber*, Case No.: 15-cv-00812-H-RBB, 2015 WL 10384654, at *5 (S.D. Cal. Dec. 2015).

In this case, Petitioner's conviction became final on March 9, 2018, sixty days after January 8, 2018, the date when his amended judgment was entered.  *See* Cal. R. Ct. 8.308(a); *Marquez*, 729 F. App'x at 584; *Smith*, 871 F.3d at 688.  The statute of limitations for federal habeas corpus began to run on March 10, 2018, the day after the judgment became final.  *See* 28 U.S.C. § 2244(d)(1)(A); *see also Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (explaining that the one-year statute of limitations under AEDPA begins to run the day after the conviction becomes final).  The statute of limitations period would therefore have expired on March 10, 2019.  *See Patterson v. Stewart*, 251 F.3d 1243, 1245–46 (9th Cir. 2001) ("In computing any period of time prescribed or allowed ... by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.").  The Petitioner constructively filed his federal Petition on February 22, 2022.  (*See* ECF No. 1.)  Accordingly, IT IS RECOMMENDED that the Court find that Petitioner filed his Petition after AEDPA's statute of limitations. Therefore, unless Petitioner is entitled to statutory or equitable tolling, his action is barred by AEDPA's statute of limitations.

2.   Statutory Tolling

a.   Legal Standard

Section 2244(d)(2) provides for statutory tolling of AEDPA's one-year limitations period during the time when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"  28 U.S.C. § 2244(d)(2).  Pending for purposes of § 2244(d)(2) "includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law."  *Evans v. Chavis*, 546 U.S. 189, 191 (2006).  "[T]ime limits, no matter their form, are 'filing' conditions." *Pace*, 544 U.S. at 417.  Thus, an untimely state habeas petition "must be treated as improperly filed, or as though it never existed, for purposes of [§] 2244."  *Lakey v.*

*Hickman*, 633 F.3d 782, 786 (9th Cir. 2011).

AEDPA's statutory tolling provision suspends the one-year statute of limitations period for the amount of time a "properly filed application for State post-conviction or other collateral review" is pending in state court.  28 U.S.C. § 2244(d)(2); *Self v. Roe*, 22 F. App'x 817 (9th Cir. 2001); *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002).  A petitioner "bears the burden of proving that the statute of limitations was tolled." *Banjo v. Ayers*, 614 F.3d 964, 967 (9th Cir. 2010).  State habeas petitions filed after the one-year statute of limitations has expired do not revive the statute of limitations and have no tolling effect. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

### b.  Analysis

Petitioner filed state habeas corpus petitions in the San Diego County Superior Court and the California Court of Appeal.  (*See* Lodg. 13, 14, 15, 16.)  Petitioner first filed a petition for writ of habeas corpus in the San Diego County Superior Court on March 10, 2021, which was denied by the superior court on May 7, 2021.  (Lodg. 13, 14; *see also* ECF No. 1-5.)  The court found that Petitioner "appealed the judgment and raised, for all intents and purposes, claims and allegations identical to the ones raised in the instant petition[.]" (Lodg. 14 at 4; *see also* ECF No. 1-5 at 4.)  The court then indicated that "[t]he Court of Appeal reversed the jury's findings on the gang enhancements and remanded the case to the trial court for resentencing."  (*Id.*)  The court then found that "the judgment was otherwise affirmed[,]" making "the gang enhancement claim [ ] moot because the enhancements were ultimately dismissed."  (*Id.*)  The court stated that "Petitioner fail[ed] to state a prima facie case for relief" since the "remaining claims have already been raised and resolved on appeal, and Petitioner does not explain why these claims should be reconsidered."  (*Id.*)

22-cv-00251-LL-BGS

Petitioner then filed a subsequent petition for writ of habeas corpus in the California Court of Appeal on July 2, 2021, which was denied on July 16, 2021. (Lodg. 15 16.) The Court of Appeal concluded that "[m]ost of the petition is procedurally barred as repetitive of claims that were considered on appeal" and found that Petitioner "has identified no jurisdictional error, fundamental constitutional error striking at the heart of the trial process, or a change in the law that would justify reconsideration of these previously rejected claims." (Lodg. 16 at 2, 3.) As to Petitioner's ineffective assistance of counsel claim, the Court of Appeal found it was "barred as untimely, because Petitioner delayed more than five years since sentencing to assert it and has provided no explanation to excuse the delay." (Lodg. 16 at 3.)

However, as indicated above, the one-year statute of limitations period expired on March 10, 2019. *See* Section III(A)(1). Petitioner filed his state habeas corpus petition in the San Diego County Superior Court on  March 10, 2021 and the California Court of Appeal on July 2, 2021.  Both dates are after the expiration of the one-year statute of limitations period. The filing of Petitioner's state petitions cannot operate to statutorily toll the statute of limitations period because it expired before an application for collateral review was filed. *See Aparicio v. Baker*, 544 F. App'x 684, 685 (9th Cir. 2013) ("[Petitioner's] untimely second state petition for postconviction relief did not toll the statute of limitations, because the federal limitations period already had expired."); *Ferguson*, 321 F.3d at 823 ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"). Accordingly, IT IS RECOMMENDED that the Court find that Petitioner is not entitled to any statutory tolling. Unless Petitioner can establish that he is entitled to equitable tolling, his Petition is untimely.

### 3. Equitable Tolling

#### a. Legal Standard

In addition to statutory tolling, AEDPA's one-year statute of limitations may be subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645

(2010).  However, the threshold necessary to trigger equitable tolling is high and, thus, it is not available in most cases.  *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010).  Petitioner bears a heavy burden to prove an entitlement to equitable tolling, "lest the exceptions swallow the rule."  *Id.* (internal quotation marks omitted).  To be entitled to equitable tolling, a habeas petitioner has the burden to establish two elements: (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way."  *Holland*, 560 U.S. at 649 (citing *Pace*, 544 U.S. at 418);  *see also Lawrence v. Florida*, 549 U.S. 327, 335 (2007) (same).  A petitioner bears the burden of establishing both elements, and failure to prove either element disqualifies the petitioner for equitable tolling.  *See Pace*, 544 U.S. at 418–19.

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'"  *Holland*, 560 U.S. at 653.  Nor does the court require "actual impossibility; rather, equitable tolling is appropriate where 'it would have technically been possible for a prisoner to file a petition, but a prisoner would have likely been unable to do so.'"  *Grant v. Swarthout*, 862 F.3d 914, 918 (9th Cir. 2017).  However, the failure to file a timely petition must be the result of external forces, not the result of the petitioner's lack of diligence.  *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also Canela v. Allison*, 2022 WL 2188388, at *6 (S.D. Cal. June 2022).  In other words, a petitioner must establish that the extraordinary circumstances caused the failure to timely file.  *See Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2005).  "Determining whether equitable tolling is warranted is a 'fact-specific inquiry.'"  *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001)).  Further, "the burden is on the petitioner to show that the 'extraordinary circumstances' he has identified were the proximate cause of his untimeliness, rather than merely a lack of diligence on his part."  *Spitsyn*, 345 F.3d at 799; *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003).

///

///

22-cv-00251-LL-BGS

b. Analysis

In her Motion to Dismiss, Respondent argued that the Petitioner is not entitled to equitable tolling because the reasons that Petitioner provided in his Petition "have been regularly rejected" and Petitioner had "not provided any specific information or evidence to show he is entitled to equitable tolling on any of the bases he request." (ECF No. 9-1 at 6.)  Respondent maintained that as to library access, COVID-19 lockdowns did not start until after the statute of limitations had expired and did not include any other documentation that shows that he requested, and was denied, access to the law library prior to the expiration of the statute of limitations.  (*Id.* at 6–7.)  Respondent also indicated that the Petitioner did not "provide any dates or documentation showing when his personal property was allegedly taken by prison officials or when it was returned to him." (*Id.* at 7.)  Respondent argued that the inmate appeal forms attached as exhibits in the Petition were "all dated after the statute of limitations expired, and most were not even delivered to prison authorities for consideration, as shown by the absence of staff responses on several forms." (*Id.*)  Respondent claimed that this shows that the Petitioner "failed to show that he exercised reasonable diligence in requesting access to his legal property." (*Id.*)

Further, Respondent argued that Petitioner "failed to prove that any of the alleged extraordinary circumstances prevented timely filing of his Petition." (*Id.*)  Respondent maintained that the Petitioner "failed to explain how any of the aforementioned grounds for equitable tolling prevented him from filing his Petition on time, especially since he simply attached his California Supreme Court petition that was filed by counsel years earlier in August 2017 as the argument to support his grounds for relief" and that the Petitioner had "provided no evidence to show that he could not have filed his Petition before the statute of limitations expired[.]" (*Id.* at 7–8.)

As indicated above, Petitioner has not opposed Respondent's Motion to Dismiss. (*See* Docket.)  In his Petition, Petitioner argued that the he was prevented from filing a timely petition because the "correctional staff [lost] all of [his] legal property and the pandemic lock downs initiated by prison authorities[.]" (ECF No. 1 at 13–14.)  Further,

Petitioner's Declaration indicated that he was separated from his legal property and unable to access the law library once he was transferred to the Department of State Hospital ("DSH"). (ECF No. 1-7 at 3.) Petitioner claimed that he later learned that his legal property was lost in transit after having been transferred to different prisons. (*Id.*) Petitioner further stated that "[b]ecause of the pandemic and lockdowns, no one was allowed to use the law library[ ] [u]ntil a few weeks ago." (*Id.*) Petitioner stated that "[h]ad Prison staff not lost [his] legal paperwork [he] could have filed [his] federal habeas in a timely manner before the pandemic lockdowns started." (*Id.*) Petitioner maintained that "once the Pandemic restrictions on movement within the prison began, access to the law library was shut down, making any real attempt to file a timely petition virtually impossible[.]" (*Id.*) Petitioner also indicated that he is "completely [unknowledgeable] of the law and legal processes. But [he] ha[s] been doing any and everything that [he] can [do] to diligently pursue post-conviction relief from my unconstitutional conviction and sentence." (*Id.* at 2.) Petitioner stated that "[s]ince [he is] indigent and unable to comprehend the law, [he] ha[s] had to depend on the assistance of fellow inmates to correspond on [his] behalf with the courts, and prison administration." (*Id.*) Petitioner indicated that he found "someone to help [him] prepare to file a federal habeas corpus petition" and "[a]s soon as [he] was able to get some assistance in preparing the writ [he] immediately took action." (*Id.* at 4.)

While equitable tolling is "unavailable in most cases," *Miles*, 187 F.3d at 1107, it is appropriate where a habeas petitioner demonstrates two specific elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented him from filing." *Lawrence*, 549 U.S. at 336–37 (quoting *Pace*, 544 U.S. at 418.) The Court analyzes each element below.

i. Extraordinary Circumstances

In demonstrating that some extraordinary circumstance stood in Petitioner's way and prevented him from timely filing his habeas petition, Petitioner would need to show that the "extraordinary circumstances beyond [the Petitioner's] control [made] it impossible to file a petition on time" and that the "'extraordinary circumstances' were the cause of his

untimeliness." *Spitsyn*, 345 F.3d at 799.

As for the alleged loss of Petitioner's legal materials, Petitioner claimed that he was separated from his personal property during his time at the DSH and that he was later informed that correctional staff had allegedly lost his legal property during transit. (ECF Nos. 1 at 14; 1-7 at 3.) Petitioner claimed that "[h]ad Prison staff not lost [his] legal paperwork [he] could have filed [his] federal habeas in a timely manner[.]" (ECF No. 1-7 at 4.)

While the Ninth Circuit has held that a complete lack of access to a legal file may constitute an extraordinary circumstance, Petitioner would still need to demonstrate that a complete lack of access to his legal file during his time at the DSH made timely filing his Petition impossible. *See Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) (citing *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027–28 (9th Cir. 2005)) (remanding for the district court to determine whether "(1) the lack of access to his legal file made a timely filing impossible, and (2) Ramirez pursued his rights diligently."). Despite the conclusory statements in the Petition, Petitioner did not do so.

Petitioner did not specifically state what dates he was temporarily relocated to the DSH and various other facilities, how long he was actually without access to his legal materials, or when he gained access to the legal materials that he needed to file his Petition. (*See* ECF Nos. 1 at 13–14; 1-7 at 1–4); *see Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002) (a "temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation."); *Hartley v. Hall*, 335 F. App'x 686, 687 (9th Cir. 2009) ("there must be a causal link between lateness and the extraordinary circumstances"). However, the Court can infer from the CDCR forms attached to his Petition that Petitioner was allegedly transferred to the DSH on either October 30, 2018 or November 30, 2018. (ECF No. 1-6 at 2, 3, 6, 8.) Thus, according to these dates, there was approximately a three-month to four-month period leading up to Petitioner's one-year filing deadline where

Petitioner allegedly lacked access to his legal materials.[2]  At the same time, Petitioner had approximately eight to nine months prior to this transfer to the DSH to prepare his habeas corpus petition.  Petitioner did not demonstrate how this three-month to four-month period where he allegedly lacked access to his legal materials during his time at DSH made timely filing his Petition impossible, when Petitioner had approximately eight to nine months prior to this transfer to the DSH to work on his Petition.  *See Smith v. Davis*, 953 F.3d 582, 599 (9th Cir. 2020), cert. denied, 141 S. Ct. 878 (2020) (finding that the Plaintiff "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court. [. . .] it is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights.").

Further, Petitioner has not addressed what, if any, effort he expended in conducting legal research, synthesizing the relevant factual records, and drafting his substantive petition within the first eight to nine months of the statute of limitations period.  *See id.* Petitioner did not file an opposition, thus failing to respond to Respondent's arguments and failing to explain the circumstances surrounding the alleged loss of his legal materials. Accordingly, it is recommended that the Court find that Petitioner's lack of legal property is insufficient to establish the extraordinary circumstances required for entitlement to equitable tolling.

Petitioner also claimed that the law library restriction resulting from the COVID-19 pandemic was an extraordinary circumstance that impeded his ability to timely file his Petition.  Petitioner stated that "[b]ecause of the pandemic and lockdowns, no one was allowed to use the law library[ ] [u]ntil a few weeks ago."  (ECF No. 1-7 at 3.)  Petitioner claimed that "once the Pandemic restrictions on movement within the prison began, access

---

[2] As indicated in Section III(A)(1), the one-year statute of limitations period expired on March 10, 2019.

to the law library was shut down, making any real attempt to file a timely petition virtually impossible[.]"  (*Id.*)

There is scant legal authority analyzing whether the COVID-19 pandemic constitutes an extraordinary circumstance that merits equitable tolling of habeas corpus claims.  However, district courts within the Ninth Circuit, including this district court, have begun to address Petitioner's pandemic-related argument.  Importantly, thus far, the courts agree that "general claims of prison lockdowns and lack of access to the prison law library as a result of the COVID-19 pandemic alone are insufficient to amount to extraordinary circumstances" for equitable tolling purposes.  *Dragasits v. Covello*, 2022 WL 207730, *7 (S.D. Cal. Jan. 2022); *see also Shephard v. Asuncion*, 2021 WL 6496744, at *10 (C.D. Cal. Nov. 2021) (finding petitioner was not entitled to equitable tolling during alleged "total lockdown" due to COVID-19 between March 2020 and August 2020); *Sholes v. Cates*, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 2021) (concluding prisoner not entitled to equitable tolling during COVID outbreak which caused the law library to be closed "for months" and thereafter open with only limited access).

Further, extraordinary circumstances due to the COVID-19 pandemic may be found only where a petitioner sets forth "fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition."  *Dragasits*, 2022 WL 207730, at *7 (citing *Chapman-Sexton v. United States*, 2021 WL 292027 at *3 (S.D. Ohio Jan. 2021); *Pryor v. Erdos*, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 2021)); *see also Rodriguez v. Fisher*, 2022 WL 2239347, *9 (S.D. Cal. June 2022) (finding "because Petitioner does not explain why COVID-19 restrictions purportedly placed upon his access to legal materials affected his ability to timely file his federal Petition only, the Court finds he is not entitled to equitable tolling for the period between March of 2020 and July of 2021"); *Canela*, 2022 WL 2188388, at *6  (finding meritless petitioner's conclusory arguments that the COVID-19 pandemic prevented him from timely filing a habeas corpus petition and that incarceration generally impedes conducting legal research for purposes of preparing such petitions).

In the instant case, Petitioner has only provided conclusory statements that the COVID-19 pandemic prevented him from timely filing his petition due to the restrictions on the law library usage.  But in doing so, Petitioner neglected to articulate any specific facts to meet his burden.  In particular, Petitioner emphasized that no one was allowed to use the law library due to the pandemic and the movement restrictions within the prison that followed, which made "any real attempt to file a timely petition virtually impossible[.]" (ECF No. 1-7 at 3.)  However, as noted above, Section 2244(d) required Petitioner to file a petition for habeas corpus no later than March 10, 2019.  *See* Section III(A)(1).  The COVID-19 Pandemic did not begin until March 2020.  *See, e.g.*, *Coleman v. Newsom*, 455 F. Supp. 3d 926, 931 (E.D. Cal. 2020) ("Although the current record is unclear as to when [state officials] began planning a response to COVID-19, they started implementing preventive measures [in California prisons] at least as of March 11, 2020, when normal visiting at CDCR institutions was canceled statewide, fact sheets and posters on the pandemic were delivered to the inmate population, and additional hand-sanitizing dispenser stations were ordered.").  Thus, the pandemic began approximately one year after the statute of limitations expired on March 10, 2019 and therefore could not have prevented Petitioner from accessing the law library.  Accordingly, it is recommended that the Court find that Petitioner's alleged lack of law library access during the COVID-19 pandemic is insufficient to establish the extraordinary circumstances required for entitlement to equitable tolling.

Assuming that Petitioner did not have law library access after having been transferred to the DSH,[3] Courts generally hold that impeded law library access does not qualify as an extraordinary circumstance warranting tolling.  *See, e.g.*, *Ramirez*, 571 F.3d at 998 ("Ordinary prison limitations on [petitioner's] access to the law library and copier[,] quite unlike the denial altogether of access to his personal legal papers[,] were neither

---

[3] Petitioner was transferred to the DSH when he had three to four months left before the expiration of his statute of limitations.  (*See*, *supra* at page 13, line 28.)

16

'extraordinary' nor made it 'impossible' for him to file his petition in a timely manner. Given even the most common day-to-day security restrictions in prison, concluding otherwise would permit the exception to swallow the rule-according to [petitioner's] theory, AEDPA's limitations period would be tolled for the duration of any and every prisoner's stay in administrative segregation, and likely under a far broader range of circumstances as well."); *Norwood v. Lockyer*, 390 F. App'x 762, 763 (9th Cir. 2010) (finding that "limited law library access, being moved to different cells, [and] temporary lockdowns" are not "out of the ordinary for prison life [. . .] that would have made it 'impossible' to file on time" and thus not a basis for equitable tolling).

Petitioner also has not identified what efforts or tasks he was unable to perform as a result of the lack of law library access during his time at the DSH that caused the Petition to be untimely. Petitioner has not explained the duration of when he lacked access to the law library while at the DSH or how any unspecified period during which he lacked access to the law library at the DSH actually precluded him from timely pursuing state and federal habeas relief.[4]  *See Nguyen v. Yates*, No. CV-09-4128-VAP-MAN, 2010 WL 2569246, at *12 (C.D. Cal. Apr. 2010) (finding that the petitioner's failure to identify efforts unable to perform due to limited law library access and failure to explain how the limited law library access precluded him from timely filing petition were part of the reason to not find equitable tolling), report and recommendation adopted, No. CV-09-4128-VAP-MAN, 2010 WL 2572607 (C.D. Cal. June 2010).  As such, the Court cannot ascertain from his allegations, even if they are liberally construed and assumed to be true, that any limitations on his law library access caused the delay in filing his state or federal petitions. *Bachmeier v. Adams*, No. C07-02924-JF-PR, 2008 WL 4078403, at *2 (N.D. Cal. Aug. 2008). Accordingly, it is recommended that the Court find that Petitioner's alleged lack of law

---

[4] As Respondent pointed out, Petitioner only completed the §2254 Habeas Petition form and attached his California Supreme Court petition, which was filed by former counsel years earlier in August 2017, as the argument to support his grounds for relief.  (*See* ECF Nos. 1; 9-1 at 7–8.)  Petitioner did not provide any addition materials that required legal research that would indicate that he could not have filed his Petition before the statute of limitations expired.  (*See id.*)

22-cv-00251-LL-BGS

library access during his time at the DSH is insufficient to establish the extraordinary circumstances required for entitlement to equitable tolling.

Additionally, Petitioner maintained in his declaration that he is "completely [unknowledgeable] of the law and legal processes" and that he "ha[s] been doing any and everything that [he] can [do] to diligently pursue post-conviction relief from my unconstitutional conviction and sentence." (ECF No. 1-7 at 2.) However, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir.2006); *see also Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("[E]quitable tolling requires a petitioner to show that some 'extraordinary circumstance[ ] beyond [his] control' caused his late petition, [. . .], and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone."); *Bartholomew v. Carey*, 308 F. App'x 57, 58 (9th Cir. 2009) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling.").

Further, Petitioner claimed that he depends on inmate assistance in preparing his court documents and that as soon as he obtain assistance, he "immediately took action." (ECF No. 1-7.) However, the Ninth Circuit has explained that Petitioner's reliance on the assistance of other inmates is not in itself an extraordinary circumstance, "given the vicissitudes of prison life." *See Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010) (rejecting petitioner's argument that delay in filing habeas petition was justified due to petitioner's "pro se status, a prison library that was missing a handful of reporter volumes, and reliance on helpers who were transferred or too busy to attend to his petitions"); *see also Baker v. California Dept. of Corr.*, 484 Fed. Appx. 130, 131 (9th Cir. 2012) (under Ninth Circuit precedent, "[l]ow literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition"); *Wilson v. Bennett*, 188 F. Supp. 2d 347, 353–54 (S.D.N.Y. 2002) (allegations that the petitioner lacked legal knowledge and had to

rely on other prisoners for legal advice and in preparing his papers "cannot justify equitable tolling," as such circumstances are not "extraordinary").

Accordingly, IT IS RECOMMENDED that the Court find that Petitioner has failed to demonstrate that extraordinary circumstances exist to support his equitable tolling claim.

### ii.    Pursuing his Rights Diligently

Even if Petitioner demonstrated that an extraordinary circumstance stood in his way and prevented him from filing, Petitioner would still have to show that he had been pursuing his rights diligently. *See Holland*, 560 U.S. at 649 ("We have previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."); *Pace*, 544 U.S. at 418–19 (finding that the petitioner had the burden of establishing both elements for equitable tolling and that failure to prove either element disqualifies the petitioner for equitable tolling).  "The diligence required for equitable tolling is reasonable diligence, not 'maximum feasible diligence.'" *Bravo v. Neotti*, No. 12CV571-DMS PCL, 2013 WL 3929999, at *4 (S.D. Cal. July 2013) (citing *Holland*, 560 U.S. at 653).

Petitioner indicated that he has "been doing any and everything that [he] can [do] to diligently pursue post-conviction relief" and that as "soon as [he] was able to get some assistance in preparing the writ [he] immediately took action."  (ECF No. 1-7 at 2.) However, Petitioner did not set forth any allegations other than his conclusory statements regarding his own diligence and has failed to show that he diligently pursued his rights. *See Rodriguez v. Evans*, No. C-05-4560-JP-PR, 2007 WL 951820, at *6 (N.D. Cal. Mar. 2007) (no equitable tolling when petitioner had access to his legal materials two months prior to the expiration of AEDPA's one-year limitations period and did not allege that he was denied access to his legal materials despite his requests).

The CDCR forms provided in his Petition, which Petitioner appears to attach to demonstrate his attempts to locate legal documents and materials, are dated March 28, 2019 through January 15, 2020.  (ECF No. 1-6 at 1–9.)  By that time, the one-year statute of

limitations had already expired.  In addition, Petitioner had approximately eight to nine months prior to his transfer to the DSH to prepare his habeas corpus petition.  Petitioner failed to demonstrate his diligence in pursuing his rights during this time and whether there were any efforts expended in conducting legal research, synthesizing the relevant factual records, and drafting his substantive petition within the first eight to nine months of the statute of limitations period.[5]  *See Smith*, 953 F.3d at 599 (finding that the Plaintiff "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court. [. . .] it is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights.").  Petitioner also did not file an opposition, thus failing to explain the circumstances surrounding his diligence in preparing his Petition.

Therefore, no basis exists to conclude that Petitioner's federal petition was delayed despite his diligent efforts to present his claims in state or federal post-conviction proceedings.  *Bachmeier*, 2008 WL 4078403, at *2. "Without presenting more specific allegations that demonstrate that the delay in his petition was caused by extraordinary circumstances beyond his control, as well as allegations of his own diligence, Petitioner is not entitled to equitable tolling of the limitations period." *Id.*

Accordingly, IT IS RECOMMENDED that the Court find that Petitioner has failed to demonstrate that he pursued his rights diligently to support his equitable tolling claim.

### iii.   Equitable Tolling Conclusion

Petitioner did not oppose Respondent's Motion to Dismiss and thus failed to address why he should be entitled to equitable tolling given Respondent's assertion to the contrary.

---

[5] Petitioner had his legal materials for the eight to nine months prior to his transfer to the DSH.  (*See* Section III(A)(3)(b)(i).)  However, Petitioner only completed the §2254 Habeas Petition form and attached his California Supreme Court petition, which was filed by former counsel years earlier in August 2017, as the argument to support his grounds for relief.  (*See* ECF No. 1.)  Thus, the record shows that Petitioner could have timely filed his Petition.

(*See* Docket.)  When given an opportunity to explain the circumstances surrounding the untimeliness of his Petition, he declined to do so.  Accordingly, based on the reasoning detailed above, IT IS RECOMMENDED that the Court find that Petitioner is not entitled to any equitable tolling, since Petitioner has failed to meet his burden of establishing that his failure to timely file the Petition was the result of extraordinary circumstances beyond his control and that he had pursued his rights diligently.  *See Espinoza-Matthews*, 432 F.3d at 1026 (petitioner "bears the burden of showing that equitable tolling is appropriate"); *Phuoc Luu v. Beard*, No. 13CV1182-MMA-RBB, 2014 WL 2616878, at *13 (S.D. Cal. June 2014) (finding that petitioner was not entitled to equitable tolling of the statute of limitations, where he did not oppose respondent's motion to dismiss and did not allege any facts in his petition for writ of habeas corpus explaining his delayed filing of the petition).

### 4.  Miscarriage of Justice Exception

#### a.  Legal Standard

Under the "fundamental miscarriage of justice" exception to the AEDPA limitation period, a habeas petitioner may pursue constitutional claims on the merits "notwithstanding the existence of a procedural bar to relief."  *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).  In rare and extraordinary circumstances, a plea of actual innocence can serve as a gateway through which a petitioner may pass to overcome the one-year statute of limitations applicable to federal habeas petitions under AEDPA.  *Id.* at 386; *see also Lee v. Lampert*, 653 F.3d 929, 934–37 (9th Cir. 2011) (en banc).  To show actual innocence, the petitioner must meet the threshold requirement set forth in *Schlup v. Delo*, 513 U.S. 298 (1995).  This requires a petitioner to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Id.* at 324.  Further, a petitioner must "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329 [noting the miscarriage of justice exception only applies to cases in which new evidence shows "it

is more likely than not that no reasonable juror would have convicted the petitioner"]). This exacting standard "permits review only in the extraordinary case, but it does not require absolute certainty about the petitioner's guilt or innocence." *Larsen v. Soto*, 742 F.3d 1083, 1095 (9th Cir. 2013). Critically, "actual innocence," for purposes of *Schlup*, "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

b. Analysis

Petitioner did not argue that he was "actually innocent" of the crimes for which he was convicted. (*See* ECF No. 1 [raising claims of witness intimidation at trial, ineffective assistance of counsel, and prosecution's refusal to timely provide required discovery in violation of due process rights].) Further, Petitioner has not presented new evidence that warrants such a finding. Thus, Petitioner is not entitled to tolling pursuant to the actual innocence exception.

5. Conclusion

Accordingly, IT IS RECOMMENDED that the Court find that the Petition is not timely under 28 U.S.C. § 2244(d)(1). As discussed above, statutory tolling does not render the Petition timely, as Petitioner's state habeas petitions were filed after the statute of limitations had expired, and Petitioner has not met the heavy burden to prove he is entitled to equitable tolling. Further, Petitioner did not claim to fall within the miscarriage of justice exception. Thus, the Petition is barred as untimely under AEDPA's statute of limitations and must be dismissed.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) **GRANTING** Respondent's Motion to Dismiss the Petition (ECF No. 9); and (3) directing that judgment be entered dismissing the Petition.

**IT IS HEREBY ORDERED** that no later than **October 7, 2022**, any party to this action may file written objections with the Court and serve a copy on all parties. The

document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **October 21, 2022**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  September 15, 2022

Hon. Bernard G. Skomal
United States Magistrate Judge

22-cv-00251-LL-BGS